USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/16/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
EVERTON STERLING,

        Plaintiff,

v.

DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR FEMIT
TRUST 2006-FF6, et al.,

        Defendants.
------------------------------------------------------X

**REPORT AND RECOMMENDATION**

19-CV-205 (GBD) (KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE GEORGE B. DANIELS, UNITED STATES DISTRICT JUDGE

**BACKGROUND**

On January 8, 2019, the plaintiff, proceeding pro se, commenced this action seeking civil remedies based on: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") "involving mortgage fraud," pursuant to 18 U.S.C. § 1964(c); (2) violations of 18 U.S.C. § 1962(a); and (3) "fraud in the factum." The plaintiff alleges that he is a "deed-owner, co-borrower, down payment provider, mortgage payment remitter and other expenses" and defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a "'NOMINEE' for Defendant FIRST FRANKLIN, A DIVISION OF NAT. CITY BANK OF IN." and a "corporate entity 'person' that is participating in the fraudulent corrupt enterprise against Plaintiff's property interests." The plaintiff alleges:

> Defendant(s), and each of them, are the Successor(s), or Agent(s) in interest to the Party Identified as the "Original Lender" (FIRST FRANKLIN) for the Mortgage(s) and Promissory Note(s) dated February 24, 2006 (*See* Exhibit "1" & "1A", Plaintiff's 1st and 2nd Mortgages and Promissory Notes with Defendant "Original Lender" in the amount of $448,000 and a second Promissory with the same Original Lender on the same transactional date in the amount of $112,000.00 respectively

1

> for a total of $560,000.00 See Exhibit "1B" the Plaintiff's Deed, equitable interest for the subject property). . . . Defendant(s), and each of them, have assumed legal rights, duties and liabilities that run with the Promissory Note. . . . Defendant(s), and each of them, fraudulently mispresented the Value of the subject property(s) and misrepresented the Loan to Fair Market Value Ratio based upon a false and inflated appraisal overstating the property value, conducted as part of a pattern of racketeering activity by the non-party malfeasants. (*See* Exhibit "2" & "2A", General Data New York Department of Finance, Notice of Property Value, Final Assessment Roll for the City of New York for Plaintiff's subject property located at 726 East 219 Street, Bronx New York 10467. Plaintiff's subject property located at these addresses [sic] dated for the year 2006 respectively).

According to the plaintiff, he "learned of the facts about the misrepresentation of the Appraisal of the property after doing some research about the subject matter of this Complaint on December 18, 2018." Based on "the representation that Defendant(s) Original Lender used to create the Promissory Notes and Mortgages dated February 24, 2006," the plaintiff "learned that he has an actionable injury in fact for Mortgage fraud involving a false an[d] inflated Appraisal overstating the Fair Market Value of each of the Mortgages he/his interest was fraudulently induced into signing with Defendant Original Lender."

Before the Court is MERS's motion to dismiss the complaint "pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 9(b) and 12(b)(6) for failure to allege fraud with specificity and failure to state a claim upon which relief can be granted." The plaintiff opposed the motion and moved to strike the motion, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

## DEFENDANT'S CONTENTIONS

MERS asserts that: (1) the doctrine pursuant to Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149 (1923) and D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303 (1983) [the "Rooker-Feldman doctrine"] "bars plaintiff's complaint"; (2) alternatively, "the *Colorado River* and *Younger* abstention doctrines apply"; (3) the plaintiff "lacks standing to

2

bring his claims and makes no allegations against MERS"; (4) the plaintiff's claims are barred by the applicable statutes of limitations; (5) the plaintiff's "civil RICO claims fail"; and (6) the plaintiff's "common law fraud claims fail." Concerning the Rooker-Feldman doctrine, MERS contends that: (i) "on April 20, 2010, the Supreme Court entered the Judgment of Foreclosure and Sale and Plaintiff's subsequent motion practice in the Foreclosure Action was unsuccessful"; (ii) the plaintiff "complains of injuries caused by the Foreclosure Action and seeks commensurate relief including 'vacatur of final foreclosure judgments, discharge of lis pendens, Satisfaction of Mortgage and Mortgage Release [and] cancellation of the Promissory Note'"; (iii) "by asking this Court to vacate the foreclosure proceedings and overturn the foreclosure, Plaintiff's Complaint invites this Court to review and reject the Judgment of Foreclosure and Sale"; and (iv) "the State Court entered the Judgment of Foreclosure and sale on April 20, 2010—years before Plaintiff filed this lawsuit on January 8, 2019." MERS contends, in a footnote to its memorandum of law, that "[a]lthough Plaintiff was not a named party to the Foreclosure Action, he clearly was a litigant in the matter," and the interests of Howard White, who executed a note, on February 24, 2006, "in favor of First Franklin a Division of Nat City Bank of IN in exchange for a loan in the amount of $448,000.00" and "a second lien note in favor of First Franklin a Division of Nat City Bank of IN in exchange for a second loan in the amount of $112,000.00)," in the "Foreclosure Action are clearly aligned with Plaintiff's claims in this lawsuit." Accordingly, the proper avenue for the plaintiff in connection with "the Judgment of Foreclosure and Sale is through the state-court appellate channels."

Alternatively, MERS contends that, "[i]n the event the Foreclosure Action is deemed ongoing due to Plaintiff's filing of subsequent motions and a notice of appeal," the complaint must be dismissed under "the *Colorado River* and *Younger* abstention doctrines." MERS asserts

3

that the plaintiff has no standing to assert mortgage fraud because: (a) he "is the current record owner of the Property at issue, but he is *not* a party to the First or Second Mortgage or the First or Second Note related to the Property"; and (b) "to the extent Plaintiff challenges the securitization of the First Loan and Second Loan (Compl. ¶¶ 16, 114-116)," that "issue has been addressed numerous times—and not in the borrower's favor" and the plaintiff is neither a party to nor the third-party beneficiary of the "securitization documents" or "the Assignment of Mortgage." Moreover, the plaintiff mentions MERS only once in his complaint, which contains no factual allegations "that specifically involve MERS." MERS asserts that the plaintiff's claims are untimely under the applicable statute of limitations, which is four years for the RICO claims and six years on the state cause of action. According to MERS, the plaintiff failed to allege any "injury related to the purported RICO activity" or a pattern of racketeering, and his "RICO claim fails because it relates to a single mortgage loan." MERS maintains that the plaintiff "does not allege a viable claim for fraud" as he does not "identify even one specific misrepresentation or material omission."

## PLAINTIFF'S CONTENTIONS

The plaintiff asserts that he stated a plausible RICO claim and "plausibly pleaded the facts and law of the fraudulent inducement and fraud in the factum." According to the plaintiff, MERS's "duplicitous effort to change the subject matter of this Complaint is clearly evident from the MERS imposition of the prior State Court foreclosure cases and unrelated Bankruptcy filings which their Attorney uses as Exhibits in their Motion to Dismiss as an affirmative defense which are irrelevant to the subject matter of this Complaint." The plaintiff maintains that "[t]he subject matter of this Complaint goes to the fact that the Mortgage transaction was fraudulently induced at its inception." The plaintiff contends that his claims are not time barred because he

4

"did not learn of the fraud perpetrated by Defendant(s) until now" and he "clearly and plausibly elucidated the series of related acts falling within the limitations period" that would "establish the fact of the ongoing and continuous acts of the Defendant(s)." The plaintiff maintains that "any and all participants in the enforcement of a fraudulently induced Mortgage contract bear some responsibility for their role in the defrauding [of] Plaintiff." The plaintiff contends that his complaint satisfies the pleading standard under Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure. He seeks to strike the "defendant's submission of state court foreclosure documents" because the prior "State court foreclosure cases are not mentioned in the Plaintiff's Complaint, not relied on by Plaintiff in drafting the Complaint, and are not otherwise proper for judicial notice."

## DEFENDANT'S REPLY

MERS objects to the plaintiff's opposition to the motion to the extent that he seeks to add new factual allegations not included in the complaint, including "Exhibit B to the opposition," which contains "a purported document titled Mortgage Fraud and issued from the U.S. Department of Justice, Federal Bureau of Investigation." MERS asserts that the plaintiff failed to make any arguments "to salvage his claims." According to MERS, the motion to strike should be denied because Fed. R. Civ. P. 12(f) does not apply to motions.

## LEGAL STANDARD

*Fed. R. Civ. P. 12(b)(1)*

A party may assert lack of subject-matter jurisdiction "by motion." Fed. R. Civ. P. 12(b)(1).

> A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to

5

evidence outside the pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.

Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000).

Article III of the United States Constitution limits the jurisdiction of federal courts to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2.

> Article III standing consists of three "irreducible" elements: (1) *injury-in-fact,* which is a "concrete and particularized" harm to a "legally protected interest"; (2) *causation* in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability,* or a non-speculative likelihood that the injury can be remedied by the requested relief. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992).

W. R. Huff Asset Mgmt. v. Deloitte & Touche LLP, 549 F.3d 100, 106-07 (2d Cir. 2008).

A district court "lacks the power to adjudicate the merits of the case" when a plaintiff lacks constitutional standing to bring the action under Article III of the United States Constitution, and dismissal for lack of standing "must be without prejudice." John v. Whole Foods Market Group, Inc., 858 F.3d 732, 735 (2d Cir. 2017).

> *Rooker–Feldman* [doctrine] bars the federal courts from exercising jurisdiction over claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L.Ed.2d 454 (2005). We have clarified that in order to satisfy the requirements of *Rooker–Feldman*, the defendant must satisfy the following four requirements: First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced. *Hoblock [v. Albany Cty. Bd. of Elections],* 422 F.3d [77, 85 (2d Cir. 2005)] (internal quotation marks and modifications omitted). The causation requirement is only satisfied if "the third party's actions are produced by a state

6

court judgment and not simply ratified, acquiesced in, or left unpunished by it."
*Id.* at 88.

Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 94 (2d Cir. 2015).

A motion to dismiss based on the Rooker-Feldman doctrine is analyzed pursuant Rule 12(b)(1) of the Federal Rules of Civil Procedure governing lack of subject matter jurisdiction. See Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014) ("Under the *Rooker–Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments.").

> Like preemption, abstention is generally disfavored, and federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. *See* [*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246 (1976)]. "The abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction," and "[i]n this analysis, the balance is heavily weighted in favor of the exercise of jurisdiction." *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (internal quotation marks and brackets omitted). As the Supreme Court has instructed:
>
>> Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest. It was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it.
>
> *Colorado River,* 424 U.S. at 813–14, 96 S. Ct. 1236 (internal quotation marks, brackets, and citations omitted). . . . In *Colorado River,* the Supreme Court held that, in addition to the earlier-established categories of abstention, in certain other "exceptional circumstances," *id.* at 813, 96 S. Ct. 1236, a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in "comprehensive disposition of litigation" and abstention would conserve judicial resources, *id.* at 817–18, 96 S. Ct. 1236. "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Dittmer,* 146 F.3d at 118, quoting *Day v. Union Mines Inc.,* 862

7

F.2d 652, 655 (7th Cir. 1988) (internal quotation marks omitted). In evaluating whether *Colorado River* abstention is appropriate, federal district courts are to consider six factors, "with the balance heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone,* 460 U.S. at 16, 103 S. Ct. 927:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.
>
> *Woodford,* 239 F.3d at 522.

Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100-101 (2d Cir. 2012).

In explaining the scope of the abstention doctrine, pursuant to Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746 (1971), the Supreme Court stated:

> Abstention is not in order simply because a pending state-court proceeding involves the same subject matter. . . . *Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution. This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions, see *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S. Ct. 1200, 43 L.Ed.2d 482 (1975), or that implicate a State's interest in enforcing the orders and judgments of its courts, see *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 107 S. Ct. 1519, 95 L.Ed.2d 1 (1987). We have cautioned, however, that federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not "refus[e] to decide a case in deference to the States." *NOPSI,* 491 U.S. at 368, 109 S. Ct. 2506. Circumstances fitting within the *Younger* doctrine, we have stressed, are "exceptional"; they include, as catalogued in [New Orleans Public Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 73, 109 S. Ct. 2506 (1989)], "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.,* at 367–368, 109 S. Ct. 2506. [Absent circumstances the Supreme Court found] "exceptional," the general rule governs: "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United*

8

*States,* 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L.Ed.2d 483 (1976) (quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S. Ct. 501, 54 L.Ed. 762 (1910)).

Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72-73, 134 S. Ct. 584, 588 (2013).

The doctrine of abstention, such as is discussed in Younger, "is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003).

> Courts in this District have construed abstention requests as motions to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See United States v. Portrait of Wally, A Painting By Egon Schiele,* No. 99 CIV. 9940, 2002 WL 553532, at *6 (S.D.N.Y. Apr. 12, 2002) (holding that 12(b)(1) motions and requests for abstention similarly present the threshold issue of whether or not to exercise the court's jurisdiction). "In deciding such a motion pursuant to Rule 12(b)(1), ... the Court must accept as true all material factual allegations in the complaint, but should refrain from drawing any inferences in favor of the party asserting jurisdiction." *People United for Children, Inc. v. City of New York,* 108 F.Supp.2d 275, 283 (S.D.N.Y.2000) (citing *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir. 1992)).

Henvill v. Metro. Transp. Auth., No. 13 Civ. 7501 (GBD), 2016 WL 519039, at *2 (S.D.N.Y. Feb. 5, 2016).

*Fed. R. Civ. P. 12(b)(6)*

A party may assert by motion "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013).

> To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). We review *de novo* a dismissal for failure to state a claim, accepting as true all material factual allegations in the complaint and drawing all reasonable

9

inferences in plaintiffs' favor. See *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 210 (2d Cir.2012). The same deference does not extend, however, to pleaded legal conclusions. See *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).

Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013). Statute of limitations is an affirmative defense, see Fed. R. Civ. P. 8(c)(1), and a motion to dismiss on the ground of statute of limitations "is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." Ghartey v. St. John's Queens Hospital, 869 F.2d 160, 162 (2d Cir. 1989). "A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991) (citation omitted).

*Fed. R. Civ. P. 9(b)*

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend." Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986)(citation omitted).

## APPLICATION OF LEGAL STANDARD

*Fed. R. Civ. P. 12(b)(1)*

Rooker-Feldman Doctrine

The Court finds that this action is not barred by the Rooker-Feldman doctrine because, unlike in Rooker and Feldman, where "the losing party in state court filed suit in federal court

10

**after the state proceedings ended** complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment," Exxon Mobil Corp., 544 U.S. at 291, 125 S. Ct. at 1526 (2005) (emphasis added), in this case, MERS presented evidence that the state-court proceedings have not ended, namely, in February 2019, the plaintiff filed an appeal in the New York State Supreme Court, Appellate Division, First Department, from the state-court "Order, dated December 20, 2018 Granting Plaintiff's Motion, denying Defendant(s) Motion, Entered January 9, 2019" in the underlying state-court action Deutsche Bank National Trust Co. v. White, et al., Index No. 381213/2008, in the New York State Supreme Court, Bronx County. Since the state suit at issue has not "unequivocally terminated," Hoblock, 422 F.3d at 89, it follows that no final "unfavorable state-court judgment" existed at the time this action commenced, given that the plaintiff filed his seemingly timely appeal after the commencement of this litigation, and that appeal appears to be pending in the state court. In the absence of the final state-court judgment, there can be no invitation for the "district court review and rejection" of the state-court judgment. Exxon Mobil Corp., 544 U.S. at 284, 125 S. Ct. at 1522. The defendant's contention that "Plaintiff lost in the State Court" is meritless because the plaintiff's state-court appeal is pending and it is premature to conclude that this action was "brought by [a] 'state-court loser[].'" Id. The defendant failed to make citation to any binding authority for the proposition that the Rooker-Feldman doctrine applies in a circumstance such as this one, where the appeal of a state-court judgment is pending at the time of the motion to dismiss. Accordingly, granting the defendant's motion to dismiss the complaint on the ground that the action is barred by the Rooker-Feldman doctrine, in this circumstance, is not warranted.

Colorado River Abstention

The defendant failed to show that the state-court action and this action are parallel because it did not establish that "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." Niagara Mohawk Power Corp., 673 F.3d at 100. Although the defendant contends that "this action involves the same issues as the Foreclosure Action," unlike the state-court action involving foreclosure, this action involves civil RICO claims, which the defendant failed to mention or discuss in its argument that the Colorado River doctrine applies. The defendant did not convince the Court that substantially the same issues are contemporaneously being litigated in the state-court action, the threshold required to be established before proceeding to the consideration and balancing of various factors in evaluating whether Colorado River abstention is appropriate in this case. See Henvill, 2016 WL 519039, at 3 ("[I]f the court has 'any doubt' about whether the two actions are parallel, the outcome should be resolved in favor of exercising federal jurisdiction."). The Court finds that Colorado River abstention is inappropriate in the circumstance of this action and granting the defendant's motion to dismiss on this ground is not warranted.

Younger Abstention

The defendant failed to show that Younger abstention applies in the circumstances of this action because it did not demonstrate that this action falls within one of the three "exceptional" circumstances to which the Supreme Court limited its application: (i) "state criminal prosecutions"; (ii) "civil enforcement proceedings"; and (iii) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint Commc'ns, Inc. 571 U.S. at 73, 134 S. Ct. at 588. This action does not involve a state criminal prosecution. Concerning the three cases in which the Supreme Court

found exceptional circumstances in "civil enforcement proceedings," this action does not involve the circumstances present in Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S. Ct. 1200, (1975), Trainor v. Hernandez, 431 U.S. 434, 97 S. Ct. 1911 (1977) and Moore v. Sims, 442 U.S. 415, 99 S. Ct. 2371 (1979). See New Orleans Public Serv., Inc., 491 U.S. at 368, 109 S. Ct. at 2518. The defendant makes citation to Huffman in support of its argument that Younger abstention applies. However, this action does not involve a federal district court intervention "in a state civil proceeding [that] is based on a state statute believed by the district court to be unconstitutional" and where the district court judgment "permanently enjoined the execution of [a certain] portion of the state court's judgment." Huffman, 420 U.S. at 594, 599, 95 S. Ct. at 1203, 1206. No state statute's constitutionality is at issue in this action and no request is made in this action to enjoin the execution of certain portions of the state court's judgment. Although the plaintiff in this action seeks "the *vacatur* of final foreclosure judgments" and a "permanent injunction against all Defendant(s), Successors, Assigns and Agents who try to enforce a claim or judgment that has been fraudulently procured," the Court is not convinced that seeking vacatur of what the plaintiff alleges is the "final" foreclosure judgment(s) and a permanent injunction against private parties constitutes the same exceptional circumstance present in Huffman, namely, request for "injunctive relief and a declaratory judgment that the [state] statute was unconstitutional and unenforceable" in an action "directed against the constitutionality of a state statute" and involving a state judgment which ordered the closure of the theater at issue as well as "the seizure and sale of personal property used in the theater's operations." Id. at 598, 95 S. Ct. at 1205. The Supreme Court's holding in Huffman was limited to "the circumstances presented here," and the Supreme Court stated that, "[f]or the purposes of the case before us . . . we need make no general pronouncements upon the application of Younger to all civil

13

litigation." Id., at 594, 607, 95 S. Ct. at 1203, 1209. The defendant does not rely on Trainor, involving an order of attachment pursuant to a state statute alleged to be unconstitutional, 431 U.S. at 436-438, 97 S. Ct. at 1915, or Moore, concerning a state-court litigation, "involving suspected instances of child abuse, [which] was initiated by state authorities" and which the district court enjoined upon finding the state statute at issue unconstitutional, 442 U.S. at 418, 99 S. Ct. at 2375. The defendant does not contend, and the Court does not find, that this case involves "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function," such as in "*Juidice v. Vail*, 430 U.S. 327, 336, n.12, 97 S. Ct. 1211, 1217, n.12, 51 L.Ed.2d 376 (1977) (civil contempt order)" and "*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13, 107 S. Ct. 1519, 1527, 95 L.Ed.2d 1(1987) (requirement for the posting of bond pending appeal)." New Orleans Public Serv., Inc., 491 U.S. at 368, 109 S. Ct. at 2518. Having failed to establish that Younger abstention applies in the circumstance of this action, granting the defendant's motion to dismiss on this ground is not warranted.

Article III Standing

The defendant contends that the plaintiff has no standing to bring this action: (a) because he "is *not* a party to the First or Second Mortgage or the First or Second Note related to the Property," making citation to New York law; and (b) to the extent that the plaintiff "challenges the securitization of the First Loan and Second Loan (Compl. ¶¶ 16, 114-116)," since "[t]his issue has been addressed numerous times—and not in the borrower's favor" and the plaintiff is not a party to the "securitization documents" or the assignment of the mortgage or their third-party beneficiary. Article III standing is not governed by state law, and the defendant failed to articulate why the plaintiff does not meet each of the elements required for standing under Lujan, including to identify and discuss the plaintiff's allegations of "injury in fact." The defendant

14

Case 1:19-cv-00205-GBD-KNF Document 94 Filed 08/16/19 Page 15 of 19

acknowledges that it is not certain whether the plaintiff "challenges the securitization of the First Loan and Second Loan (Compl. ¶¶ 16, 114-116)," but asserts lack of standing as an affirmative defense to such a challenge. To support its lack of standing affirmative defense, the defendant makes a string-citation to multiple cases, without discussing each Lujan element and explaining how each of the cases cited supports the defendant's lack of standing argument in the circumstance of this case. However, making a string-citation, without articulating arguments concerning each of the Lujan requirements is not sufficient, in this circumstance, to warrant dismissal of the complaint based on the ground lack of standing.

***Fed. R. Civ. P. 12(b)(6)***

The Court will determine the motion under Fed. R. Civ. P. 12(b)(6) based on the pleadings.

(a) Statute of Limitations

"Civil RICO claims are subject to a four-year statute of limitations. The limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury." Lanza v. Merrill Lynch & Co., 154 F.3d 56, 58, (2d Cir. 1998) (citations omitted).

> The following actions must be commenced within six years: . . . an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.

New York Civil Practice Law and Rules § 213(8).

Although MERS argues that the plaintiff's claims are untimely, it failed to address the plaintiff's factual assertion, which must be taken as true on the instant Rule 12(b)(6) motion to dismiss, that "he learned of the facts about misrepresentation of the Appraisal of the property . . . on December 18, 2018." Given that: (a) the statute of limitations period under both civil RICO and the state cause of action for fraud begins to run when the plaintiff discovers or should have

discovered the injury; and (b) the plaintiff discovered the injury on December 18, 2018, granting MERS's motion to dismiss on the ground of statute of limitations is not warranted.

(b) Failure to State a Claim

RICO provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

18 U.S.C. § 1962(a).

To establish a civil RICO claim, a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity," as well as "injury to business or property as a result of the RICO violation." *Anatian v. Coutts Bank (Switz.) Ltd.,* 193 F.3d 85, 88 (2d Cir.1999) (internal quotation marks omitted). The pattern of racketeering activity must consist of two or more predicate acts of racketeering. 18 U.S.C. § 1961(5).

Lundy v. Catholic Health System of Long Island, 711 F.3d 106, 119 (2d Cir. 2013).

Where the RICO predicate acts are alleged to involve mortgage fraud, such as in this circumstance, the plaintiff's "allegations must satisfy the requirement" of Fed. R. Civ. P. 9(b) that "a party must state with particularity the circumstances constituting fraud." Id. Since "the essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income," "to state a claim for civil damages under § 1962(a), a plaintiff must allege

16

injury from the defendants' investment of racketeering income in an enterprise." Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990).

The complaint is devoid of any allegations against MERS, and it does not even mention MERS, except once, in a section styled "PARTIES." No allegations of the defendant's investment of racketeering income in an enterprise or any injury by reason of the defendant's investment of racketeering income in an enterprise exist in the complaint. Although the defendant contends that this action involves "a single mortgage loan" that does not constitute a "pattern of racketeering activity under 18 U.S.C. §1961(5) ("'pattern of racketeering activity' requires at least two acts of racketeering activity" occurring within 10 years), Exhibit Nos. 1 and 1A, attached to the complaint evidence two mortgage loans in differing amounts. Absent evidence that the mortgage instruments at issue constitute "a single mortgage loan," and the defendant does not point to any language in those instruments stating so, it cannot be concluded that the RICO claims fail as a matter of law because "the allegations involve only a single loan." The Court finds that the complaint fails to allege sufficient facts that, taken as true, state a plausible claim for relief. Accordingly, dismissal of the complaint for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6) is warranted.

*Fed. R. Civ. P. 9(b)*

The complaint, alleging mortgage fraud, fails to comply with Fed. R. Civ. P. 9(b) because it does not "state with particularity the circumstances constituting fraud" against MERS. Thus, dismissing the complaint for failure to comply with Fed. R. Civ. P. 9(b) is warranted.

*Leave to Amend*

A liberal reading of the complaint does not give any indication that a valid claim might be stated, especially in the light of the requirement that an injury must be alleged from the

17

defendant's investment of racketeering income in an enterprise; thus, leave to amend the complaint is not warranted.

### *Plaintiff's Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)*

Rule 12(f) of the Federal Rules of Civil Procedure does not apply to the defendant's motion. Accordingly, granting the plaintiff's motion to strike is not warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that: (1) the defendant's motion to dismiss the complaint against MERS, pursuant to Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 12(b)(6), Docket Entry No. 17, be granted; and (2) the plaintiff's motion to strike, Docket Entry No. 71, be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 1310, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will***

*preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York  
      August 15, 2019

Respectfully submitted,

Copy mailed to:

Everton Sterling

*/s/ Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE

*evertonsterling4.rr*